Anil Dass (SBN #2698777)
23-22 Steinway Street
Astoria, New York 11105
Tel: 718-255-5934
Fax:
Email: anildass@earthlink.net

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIV DASS, individually and on behalf of all those similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| FORD MOTOR COMPANY LINCOLN MOTOR COMPANY | |
| Defendants. | |

## INTRODUCTION AND NATURE OF THE CASE

1. This is a class action lawsuit brought by Plaintiff on behalf of itself and a class of current and former owners and lessees of certain Ford Motor Company, Lincoln Motor Company which is a subsidiary of Ford Motor Company ("Ford/Lincoln" or "Defendants") vehicles containing soy-based wiring insulation, wiring coating and/or other parts and components (the "Class Vehicles"). Plaintiff seeks redress on behalf of itself and the class defined herein for damage resulting from the inclusion of soy-based materials in Class Vehicle wiring or wiring systems.

2. Ford/Lincoln incorporates soy-based ingredients in the wiring in Class Vehicle electrical wiring systems (as well as other parts of the Class Vehicles) that bait rodents to the vehicles and entices these pests to chew through, eat, or otherwise damage and compromise the wiring (the "Defect").

3. Ford/Lincoln vehicles are marketed, sold, serviced and repaired by appointed Ford/Lincoln-authorized vehicle dealers. Indeed, upon information and belief consumers (including Plaintiff) have been informed by Ford/Lincoln-authorized dealers that rodent damage to Class Vehicles relating to the Defect is a common problem experienced by consumers.

4. The Defect causes damage to the Class Vehicles' electrical and other operational systems and/or these systems cease to function, leaving the vehicles partially or completely inoperable. This can cause major safety hazards and makes the vehicles inherently dangerous to drive.

5. The soy-based parts are purportedly more environmentally friendly and less expensive than traditional wiring and other parts and components. However, current and former Class Vehicle owners and lessees should not be required to bear costs associated with the Defect, should not be subject to safety hazards which put them at bodily risk, nor should they be required to bear the risk of future out-of-warranty problems for animal damaged wiring that results simply because Ford/Lincoln made a cost-conscious decision to include cheaper soy-based materials in Class Vehicles. Despite the fact Ford/Lincoln is aware (or should be aware) of the Defect and that resulting rodent or other animal damage is a widespread problem in Class Vehicles across the United States, Ford/Lincoln has failed to disclose the Defect to Class Vehicle purchasers and lessees, and routinely refuses to repair the Class Vehicles under its Limited Warranty (the "Warranty") that it issues with each Class Vehicle purchase or lease.

6. Worse still, upon information and belief, when Ford/Lincoln repairs Defect-related damage for Class Members, it simply incorporates new defective soy-based wiring parts or components, exposing Class Vehicles to the continued risk and likelihood of future rodent or animal damage which will necessitate additional repairs, all to be paid for by Class Members.

7. Upon information and belief, when Class Members bring their Class Vehicles to Ford/Lincoln's authorized dealers for Defect-related repairs, Ford/Lincoln charges consumers for the costs associated therewith.

8. As a result of the Defect and the monetary costs associated with repairs, as well as other out-of-pocket losses and diminished Class Vehicles values, as well as safety risks, Plaintiff

and Class Members have suffered injury in fact, incurred damages, and have otherwise been harmed by Ford/Lincoln's conduct.

9. As set forth, Plaintiff seeks redress for, among other things, Ford/Lincoln's violations of warranty laws. Plaintiff also seeks recovery for monetary and equitable relief for Ford/Lincoln's failure to implement or honor the terms of its Warranty, breaches of implied warranties, unjust enrichment, restitution, and declaratory relief and for placing drivers of Class Vehicle's at safety risks

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction over the individual and class claims asserted herein pursuant to 28 U.S.C. § 1332, as amended in 2005 by the Class Action Fairness Act, as: (A) the amount in controversy in this class action exceeds $5,000,000, exclusive of interests and costs; and (B) a substantial number of the members of the proposed class are citizens of a state different from that of Defendants. In addition, Plaintiff Shiv Dass is a citizen of a state different from that of Defendants, a Michigan Corporation.

11. The Court has personal jurisdiction over Plaintiff. Defendants Ford/Lincoln Motor Company maintains headquarters in Dearborn, Michigan and conducts business throughout the United States of America. Plaintiff Shiv Dass is a citizen of Elmhurst, New York.

12. Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

13. Plaintiff Shiv Dass is a resident of Queens, New York and an individual consumer.

14. During the Class Period, Mr. Dass leased a 2018 Lincoln MKZ in Queens, New York at Ford/Lincoln Lincoln of Queens.

15. Ford/Lincoln Motor Company is a corporate citizen of Michigan and an authorized Ford/Lincoln dealer located in Queens, New York.

## FACTUAL ALLEGATIONS

16. On February 3, 2018, plaintiff leased a Lincoln MKZ from Ford/Lincoln Lincoln of Queens located in Queens, New York.

17. As with many Class Vehicles, Dass kept and stored his Class Vehicle in the driveway of his house.

18. On March 9, 2019, Dass experienced failure of the Class Vehicle to properly operate. The vehicle became inoperable while driving and put Dass at risk of serious bodily harm.

19. On March 9, 2019, Dass took the Class Vehicle to Ford/Lincoln Lincoln of Queens for repair. After disassembling the Class Vehicle, the Ford/Lincoln technicians advised Dass that the wiring harness in the Class Vehicle was eaten by rodents.

20. Ford/Lincoln informed the Plaintiff that the repair and replacement would not be covered under Ford/Lincolns Warranty.

21. Following the repair and replacement of the wiring, Shiv Dass was billed $489.94.

22. On April 30, 2020, Dass experienced failure of the Class Vehicle to properly operate. The vehicle became inoperable while driving and put Dass at risk of serious bodily harm.

23. On April 30, 2020, Dass took the Class Vehicle to Ford/Lincoln Lincoln of Queens for repair. After disassembling the Class Vehicle, the Ford/Lincoln technicians advised Dass that the wiring harness in the Class Vehicle was eaten by rodents.

24. Ford/Lincoln informed the Plaintiff that the repair and replacement would not be covered under Ford/Lincolns Warranty.

25. Following the repair and replacement of the wiring, Shiv Dass was billed $108.87.

26. To date, Ford/Lincoln has failed to adequately remedy the Defect in Plaintiff's Class Vehicle or reimburse him for the rodent-related damage he paid to repair the Class Vehicle or reimburse him the lease payments made during the time periods in which the vehicle was inoperable.

27. Dass has suffered an ascertainable loss as a result of the Defendants' wrongful ats, denials, omissions and/or misrepresentations associated with the Defect, including, but not limited to, cost of repairs, future repairs, diminished value of the Class Vehicle, cost of lease

1  payments made during the time period that the vehicle was inoperable, and great safety risk of
2  bodily harm.
3      28.   Ford/Lincoln never informed Dass of the existence and prevalence of the Defect
4  prior to him leasing the vehicle, nor did they warn Dass of the risks associated with the Defect or
5  provide instructions to avoid the injuries that would result from the Defect, even though the
6  Defendants were aware of the issue prior to the vehicle purchase by Dass.
7      29.   Had Dass, and other members of the Class Action, known of the Defect, they
8  would not have purchased and/or leased the Class Vehicles for the amount that was paid.

**THE DEFECTIVE SOY-BASED MATERIALS WITHIN CLASS VEHICLES**

30.   Electrical wiring in modern equipment/vehicles. A vehicle's electrical wiring connects the various critical and non-critical vehicle systems. The wire creates circuits that must stay intact in order for the vehicle to function as intended.

31.   Electrical systems deliver and monitor electrical power to various devices and sensors in the vehicle. A vehicle's electrical system is complex and is made up of many different components. The battery is the center of and powers the electrical system. The electrical system is made up of a web of connected wires, fuses and relay systems. The wiring carries the current supplied by the battery and directs it to various vehicle components. When an electrical component is not working correctly, it is often caused by an open circuit, when can result from a broken or compromised wire or wire connection. When this occurs, vehicle functions that are imperative to safe vehicle operations may not work properly. This is because when electrical wiring is disconnected or compromised, circuits are broken, causing systems to partially or completely fail.

32.   Historically vehicle wiring was coated or covered with a glass, plastic or polymer-based insulation. Since the mid- to late-2000s, there has been a dramatic downshifting in vehicle manufacturing which has spurred manufacturers to explore new materials to decrease cost and make more parts recyclable. As a result, upon information and belief, Ford/Lincoln and other major vehicle manufacturers migrated from petroleum-based wire insulation to a soy-based

automobiles parts because it became considerably less expensive and its purportedly more environmentally friendly, as it is biodegradable.

33. Wiring coating and/or insulation is an imperative line of defense to protect the integrity of electrical wiring in automobile electrical systems. But upon information and belief, Ford/Lincoln made the decision to incorporate soy-based material in its wiring insulation and/or coatings without intentions of being environmentally friendly, but for profit and cost-cutting.

34. The transition to soy-based wiring parts and other parts has created an attraction for rodents and other animals and pests under the hoods of Class Vehicles at the expense of the Class Members. Rodents and other animals are attracted to the soy-based materials in the Class Vehicles, whether it is in the electrical wiring and wiring parts, seat cushion foam, air filters, or elsewhere in the Class Vehicles.

35. The inclusion of these materials attracts rodents and other animals that nest under the hoods of Class Vehicles and feast on the wires, thereby compromising the integrity of Class Vehicles electrical systems and rendering Class Vehicles fully or partially inoperable. Vehicle electrical wiring does not have to be entirely chewed through to jeopardize the functionality of the wiring system, rather, mere exposure of the wires can make a vehicle unfit of use.

36. The safety concerns raised by wiring damage and failures in vehicle electrical systems poses a legitimate threat to the safety of Plaintiff, Class Members and prospective purchasers or lessees of Class Vehicles.

37. Soy-based wiring is not suitable for its intended purpose – to protect vehicle wiring and circuitry in order to keep vehicles operational and safe.

38. Defendants should (a) disclose this issue to prospective purchasers and lessees; (b) should not be excluding repairs for rodent/animal related damage from coverage under the terms of Ford/Lincoln' Warranty; (c) Defendants should be taking appropriate measures to modify the areas surrounding the wires in such a way to prevent the ongoing intrusion from rodents.

39. As a result, Plaintiff and members of the proposed Class were harmed in their business and/or property in multiple ways and suffered actual damages, including but not limited to: (a) The monetary costs associated with repairs as well as other out-of-pocket losses; (b)

1  Overpayment for leased or purchased Class Vehicles, in the Plaintiffs believed that they were
2  paying for vehicles that would not be an increased risk of damage by pests because of the
3  insulation of souy0based products or obtained vehicles with these products; (c) The diminished
4  value of the Class Vehicles, thus reducing their resale value unless and until suitable replacement
5  is undertaken; and (d) cost of the time period in which the vehicle was inoperable.

### DEFENDANTS' KNOWLEDGE OF THE DEFECT

40. Defendants were aware or should have been aware of the Defect in Class Vehicles through (1) its own records of customers' complaints; (2) dealership repair records; (3) warranty and post-warranty claims; (4) internal durability testing; and (5) other various sources. Despite their knowledge, Defendants failed to notify consumers of the nature and extent of the Defect and/or provide any adequate remedy under the Warranty.

41. Defendants are also aware or should have been aware of the Defect, because upon information and belief, its agents, dealers, or other representatives routinely and consistently refuse to provide Warranty coverage for damage to Class Vehicles resulting from the Defect. Instead, Defendants, through their agents, dealers, or other representatives, compels consumers to either pay for repairs out-of-pocket or to make an insurance claim and pay an expensive deductible.

42. Furthermore, the defective nature of the soy-based wiring has been widely publicized and known within the vehicle manufacturing industry generally.

43. A number of news stations across the United States have done consumer interest stories on soy-based wiring in vehicles, reporting on how the inclusion of these materials or ingredients attracts pests that causes extensive damage.

44. Ford/Lincoln has evaded and continues to evade its Warranty obligations by failing to tell consumers their Class Vehicles are defective and by claiming rodent damage is not covered under Warranty repairs or replacements.

45. Ford/Lincoln reasonably should have known that soy-based materials are causing damage to cars by attracting rodents. Yet, Defendants' consistently refuse to repair the Class Vehicles under the Warranty when the Defect manifests.

**DEFENDANTS' KNOWLEDGE OF THE DEFECT**

46.     Despite Ford/Lincoln's reasonably expected knowledge of the Defect, it refuses to honor its Warranty, which provides: "To the extend permitted by law, THIS WARRANTY IS EXPRESSLY INSTEAD of any express of implied warranty, condition or guarantee, agreement, or representation, by any person . . . ." (Warranty attached as Exhibit A and B).  The Warranty also states:

> The remedy under this written warranty, and any implied warranty, is limited to repair, replacement, or adjustment of defective parts. This exclusive remedy shall not be deemed to have failed its essential purpose so long as Ford, through its authorized dealers, is willing and able to repair, replace, or adjust defective parts in the prescribed manner. Ford's liability, if any, shall in no event exceed the cost of correcting manufacturing defects as herein provided and upon expiration of this warranty, any such liability shall terminate.

47. The Warranty specifically spells out what it does not cover:

**WHAT IS NOT COVERED UNDER THE NEW VEHICLE LIMITED WARRANTY?**

**Damage Caused By:**
- accidents, collision or objects striking the vehicle (including driving through a car wash)
- theft, vandalism, or riot
- fire or explosion
- using contaminated or improper fuel/fluids
- customer-applied chemicals or accidental spills
- driving through water deep enough to cause water to be ingested into the engine
- misuse of the vehicle, such a driving over curbs, overloading, racing or using the vehicle as a permanent stationary power source

**Damage Caused by Alteration or Modification**

The New Vehicle Limited Warranty does not cover any damage caused by:
- alterations or modifications of the vehicle, including the body, chassis, electronics or their components, after the vehicle leaves the control of Ford Motor Company
- tampering with the vehicle, tampering with the emissions systems or with the other parts that affect these systems (for example, but not limited to exhaust and intake systems)

48. Furthermore, Ford/Lincoln states that environmental damage is not covered under the Warranty but this does not account for chewing by rodents.

49. The section on "Damage Caused by Use and/or the Environment" discussing what is not covered states:

> **Damage Caused by Use and/or the Environment**
>
> The New Vehicle Limited Warranty does not cover surface rust, deterioration and damage of paint, trim, upholstery, and other appearance items that result from use and/or exposure to the elements. You, as the owner, are responsible for these items. Some examples are:
> - dings, dents
> - cuts, burns, punctures or tears
> - road salt
> - tree sap, bird and bee droppings
> - windstorm, lightening, hail
> - earthquake
> - freezing, water or flood
> - stone chips, scratches (some examples are on paint and glass)
> - windshield stress cracks. However, limited coverage on windshield stress cracks will be provided for the first 12 months or 12,000 miles (which ever occurs first), even though caused by use and/or exposure to the elements.

50. The Warranty does not expressly or impliedly disclaim Warranty coverage for rodent or other animal damage in Class Vehicles and the same is true for the Warranties that cover all Class Vehicles. If Ford/Lincoln wanted to exclude rodent damage from Warranty coverage, it could have done so, just as it did for numerous other specific issues. But Ford/Lincoln did not exclude this damage.

51. Ford/Lincoln has denied Warranty coverage to Plaintiff and Class Members for Defect-related damage. Ford/Lincoln has refused to cover the costs of repairs due to a problem the Ford/Lincoln created. Thus, Plaintiff and Class Members were and are forced to pay out of pocket for repairs and services (and other out of pockets) that should have been covered under Ford/Lincoln's Warranty.

## CLASS ACTION ALLEGATIONS

52. Plaintiff brings this action on behalf of himself and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a nationwide class he seeks to represent, defined as:

> All U.S. residents who have purchased the 2018 Lincoln MKZ (the "Class Vehicle(s)") from February 3, 2018 through the final disposition of this and any and all related actions (collectively, the "Class") for personal use and not for resale.

53. As used herein, the term "Class Members" shall mean and refer to the members of the Class described above.

54. Plaintiff reserves the right to amend the Class definition, and to add subclasses, as warranted by facts discovered.

55. Excluded from the Class are Ford/Lincoln Motor Company; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge(s) to whom this case is assigned and any immediate family members thereof.

56. Class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

57. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that joinder is impracticable. Upon information and belief, there are millions of individual purchasers of the Class Vehicles. The precise number of class members is unknown to Plaintiff, but may be ascertained, including by objective criteria. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

58. **Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) & 23(b)(3).** This action involves common questions of law or fact, which predominate over any questions affecting individual members of the Class. These common legal and factual questions include, but are not limited to:

(a) Whether Defendants engaged in the conduct alleged herein;

(b) Whether Defendants designed, advertised, marketed, distributed, leased, sold or otherwise placed Class Vehicles into the stream of commerce in the United States;

(c) Whether Ford/Lincoln Lincoln of Queens is an authorized agent of Ford/Lincoln;

(d) Whether Ford/Lincoln leased, sold, or otherwise placed Class Vehicles into the stream of commerce in New York;

(e) Whether the Class Vehicles are sold with soy-based wiring insulation and other parts or components;

(f) Whether Defendants knew that Class Vehicles with soy-based wiring insulation and other parts or components subject these vehicles to an increased risk of damage from pests chewing through, eating, or otherwise damaging and compromising the Class Vehicles;

(g) Whether Defendants failed to disclose the fact that Class Vehicles include soy-based wiring insulation and other parts or components and the consequences to its customers;

(h) Whether a reasonable consumer would consider the Defect or its consequences to be material;

(i) Whether the Defect caused Class Vehicles to malfunction;

(j) Whether Defendants' conduct violates state and federal warranty laws and other laws as asserted in herein;

(k) Whether the Defect is covered or should be converted under Ford/Lincoln's Warranty;

(l) Whether Plaintiff and the other Class Members overpaid for their Class Vehicles as a result of the Defect alleged herein;

(m) Whether Plaintiff and the other Class Members re entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

(n) Whether Plaintiff and the other Class Members are entitled to damages and other monetary relief and, if so, in what amount.

59. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all members of the Class were comparably injured through the uniform misconduct described above and were

subject to Ford/Lincoln's false, deceptive, misleading, and unfair labeling and marketing practices, including the false claims that the Products are safe and/or quality. Further, there are no defenses available to Ford/Lincoln's unique to individual Class Members.

60. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the members of the Class because his interests do not conflict with the interests of the other members of the Class he seeks to represent; he has retained competent counsel with experience in complex class action litigation; and Plaintiff will prosecute this action vigorously. Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel.

61. **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Ford/Lincoln has acted or refused to act on grounds generally applicable to Plaintiff and other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class as a whole.

62. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Ford/Lincoln, so it would be impracticable for members of the Class to seek redress for Ford/Lincoln's wrongful conduct on an individual basis. Individualized litigation would also pose the threat of significant administrative burden to the court system. Individual cases would create the potential for inconsistent or contradictory judgments and would increase delay and expense to all parties and the court system. By contrast the class action device presents far fewer management difficulties and provides the streamlined benefits of singular adjudication and comprehensive supervision by one court. Given the similar nature of the class members' claims, the Class will be easily managed by the Court and the parties and will be managed more efficiently in this integrated class action than through multiple separate actions in the various states.

# CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### DECLARATORY JUDGEMENT ACT, 28 U.S.C. §2201(a) et.seq.

**(AGAINST ALL DEFENDANTS, AS TO THE NATIONWIDE CLASSES)**

63. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

64. The Class Vehicles owned or leased by Plaintiff and the putative Class Members all were initially sold or leased with an accompanying express warranty issued by Ford/Lincoln. A copy of that warranty covering Plaintiff's vehicle, which in all matters pertinent to this action is identical across all Class Vehicles, is attached hereto as Ex. A.

65. All Class Vehicles are equipped with soy-based wiring. For the reasons detailed in this class action complaint, this wiring is defective in material and/or workmanship under normal use because soy-based material compromising the wiring, or its insulation attracts rodents or other animals that then chew through the wiring. The soy-based material compromising the wiring, or its insulation is therefore unfit to achieve wiring's purpose and once chewed through, the wiring fails in its workmanship because it no longer is able to achieve its intended electrical function.

66. The soy-based wiring in Class Vehicles experienced this Defect in material and workmanship during the durational term of Ford/Lincoln's Limited Warranty. The soy-based material compromising the wiring or its insulation in Class Vehicles attracted rodents or other animals that chewed through the wiring or its insulation in Plaintiff's and Class Vehicles, leaving the Class Vehicles partially inoperable during the term of the Limited Warranty.

67. Other Class Members have experienced the same fate as Plaintiff in their Class Vehicles, and countless others will experience this same fate during the term of the Ford/Lincoln Limited Warranty.

68. A real controversy or dispute exists between Plaintiff (and the Class Members) versus Ford/Lincoln, regarding Ford/Lincoln's duties and Plaintiff's and the Class Members' rights with respect to obtaining coverage under the Ford/Lincoln Limited Warranty for the defective soy-based wiring or its insulation in the Class Vehicles.

69. Not only will a determination of whether the soy-based wiring or its insulation in the Class Vehicles is subject to coverage under the Limited Warranty impact the rights of the Class Members to have their repair reimbursed or covered by Ford/Lincoln, but such a determination will also impact the value of each Class Members' purchase or lease of a Class Vehicle. An express warranty that, by its terms, purports to cover soy-based wiring or its insulation that is alleged to be defective is worth less than an identically-worded warranty that is interpreted to cover defective soy-based wiring or its insulation.

70. As a result of the controversy and dispute as to warranty coverage between Plaintiff (and the Class Members) and Ford/Lincoln, Plaintiff is entitled and does seek a declaratory judgment as to Plaintiff's and Class Members' rights to obtain warranty coverage from Ford/Lincoln's Limited Warranty for any damage, whether regarding the Class Vehicles or bodily harm, during the durational term of Ford/Lincoln's Limited Warranty, caused by the defective soy-based wiring or its insulation in the Class Vehicles.

71. Pursuant to 28 U.S.C. 2202 of the Declaratory Judgment Act, which provides that "further necessary or proper relief based on declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment," Plaintiff also seeks as part of this Declaratory Judgment Act count, an Order declaring that Plaintiff's action has conferred a common benefit to Class Members entitling Plaintiff and their counsel to an award of attorneys' costs and fees for conferring the same.

## SECOND CLAIM FOR RELIEF
## BREACH OF EXPRESS WARRANTY

72. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

73. Plaintiff brings this claim for relief pursuant to the New York's General Business Law § 350.

74. The Class Vehicles owned or leased by Plaintiff and the putative Class Members all were initially sold or leased with an accompanying express warranty issued by Ford/Lincoln known as the Ford/Lincoln Limited Warranty.

75. All Class Vehicles are equipped with soy-based wiring or its insulation. For the reasons detailed in this class action complaint, this soy-based wiring or its insulation is defective in material or workmanship under normal use because soy-based material compromising the wiring or its insulation attracts rodents or other animals that then chew through the wiring. The soy-based material compromising the wiring or its insulation is therefore unfit to achieve wiring's intended purpose, and once chewed through, the wiring fails in its workmanship because it no longer is able to achieve its intended electrical function.

76. The soy-based wiring in Class Vehicles experienced this Defect in material and workmanship during the durational term of Ford/Lincoln's Limited Warranty. This soy-based material compromising the wiring in Class Vehicles, leaving them fully or partially inoperable during the term of the Limited Warranty.

77. Despite Plaintiff's experiences and that of countless other Class Members, and despite the express terms of the Limited Warranty, Ford/Lincoln has taken the position that the soy-based wiring or its insulation in Class Vehicles does not amount to a defect in material or workmanship that is subject to coverage under the Limited Warranty. Plaintiff, therefore, was charged and paid for the repair or replacement of the defective soy-based wiring or its insulation in its Class Vehicle that was chewed through by a rodent or animal and that, therefore, left the vehicle inoperable. This, despite the fact, that when this problem initially arose and Plaintiff brought its vehicle for repair to a Ford/Lincoln factory-authorized dealership, the vehicle was within the age, operational hours and mileage durational limits of Ford/Lincoln's Limited Warranty.

78. Ford/Lincoln's failure to cover under warranty the repair or replacement of defective soy based wiring or its insulation when Plaintiff's vehicle was presented to a Ford/Lincoln dealership for such repair during the durational term of the warranty, amounts to a material breach of Ford/Lincoln's obligations under the Ford/Lincoln Limited Warranty.

79. As a direct, proximate, and foreseeable result of Ford/Lincoln's material breach of its Limited Warranty, Plaintiff and all Class Members whose vehicles that were brought for repairs to a Ford/Lincoln dealership during the term of the warranty but were not

afFord/Lincolned coverage for that repair under that warranty were all injured by, inter alia, paying for that repair either themselves out-of-pocket or going through their own insurance products instead of having that repair made free of charge by Ford/Lincoln, as was called for under the Ford/Lincoln Limited Warranty.

## THIRD CLAIM FOR RELIEF
## MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, et. seq.)
## (AGAINST FORD/LINCOLN AS TO THE NATIONWIDE CLASS)

80. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

81. Ford/Lincoln is a "warrantor" within the meaning of the federal Magnuson-Moss Warranty Act.

82. Plaintiff and each of the putative Class Members are "consumers" within the meaning of the federal Magnuson-Moss Warranty Act.

83. Contrary to the representations of its Limited Warranty, Ford/Lincoln has since told Plaintiff the Defect in material or workmanship to the soy-based wiring or its insulation in the Class Vehicles that is described in this class action complaint (and that Plaintiff experienced) is not subject to coverage under Ford/Lincoln's Limited Warranty.

84. Prior to commencing this suit, Plaintiff notified Ford/Lincoln through its authorized dealer of the Defect and provided Ford/Lincoln an opportunity to cure the same under their Limited Warranty, but Ford/Lincoln has not done so.

85. Under 15 U.S.C. § 2310(d)(1), Plaintiff, as a consumer "who [are] damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). Plaintiff sues pursuant to this section to recover money damages and for legal and equitable relief on behalf of itself and the Class Members.

86. Likewise, pursuant to 15 U.S.C. § 2310(d)(2), upon prevailing in this action, Plaintiff is entitled to receive an award of attorneys' fees and expenses and pray for the same.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for:

A. An order certifying the Class and appointing Plaintiff as the representative of the Class, and appointing counsel of record for Plaintiff as counsel for the Class;

B. Declaratory and injunctive relief as permitted by law or equity, including enjoining Ford/Lincoln Motor Company from continuing the unlawful practices described herein, and directing Ford/Lincoln to identify, with Court supervision, victims of the misconduct and pay them restitution and disgorgement of all profits and unjust enrichment Ford/Lincoln acquired by means of any business practice declared by this Court to be unlawful, unfair, and fraudulent;

C. An Order for Ford/Lincoln to engage in a corrective advertising campaign;

D. Damages in an amount to be determined by this Court but at least $5,000,000;

E. Restitution, disgorgement, and/or constructive trust on all of the inequitable payments and profits Ford/Lincoln retained from Plaintiff and the Class Members in an amount to be determined by this Court but at least $5,000,000;

F. Attorneys' fees, per New York General Business Law § 349(h);

G. Expenses and costs of this action;

H. Pre-judgment and post-judgment interest; and

I. Such other and further relief as the Court may deem just and proper.

Dated: September 22, 2020

*By* /s/ Anil Dass
Anil Dass, Esq.
23-22 Steinway Street
Astoria, New York 11105
Tel: (718) 255-5934
Email: anildass@earthlink.net

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: September 22, 2020

*By* /s/ Anil Dass
Anil Dass, Esq.
23-22 Steinway Street
Astoria, New York 11105
Tel: (718) 255-5934
Email: anildass@earthlink.net